FILED
IN OPEN COURT

JUN 15 2009

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 2:09cr 54 |
| | ) |
| VIRGINIA HARBOR SERVICES, INC., | ) |
| formerly doing business as | ) |
| Trelleborg Engineered Products, Inc. | ) |
| | ) |
| Defendant. | ) |

## STATEMENT OF FACTS

If this case proceeded to trial, the United States would be able to prove beyond a reasonable doubt the following facts:

1. For purposes of this Statement of Facts, the "relevant period" is that period from on or about December 2002, continuing until on or about August 2005 with regard to matters concerning foam-filled marine fenders and buoys, and on or about December 2002, continuing until on or about May 2003 with regard to matters concerning plastic marine pilings. Throughout the relevant period, the defendant was organized and existing under the laws of Delaware, and had its principal place of business in Frederick County, Virginia. During the relevant periods, the defendant was engaged in the manufacture and sale of a number of products, including: foam-filled marine fenders and buoys; and plastic marine pilings.

### The Foam-filled Marine Fenders and Buoys Conspiracy

2. Foam-filled marine fenders are used as a cushion between ships and either fixed structures such as docks or piers, or floating structures such as other ships. Foam-filled buoys are used in a variety of applications, including as channel markers and navigational aids. For purposes

of this Statement of Facts, foam-filled marine fenders and buoys refers to fenders and buoys constructed of an elastomer shell filled with closed-cell polyethylene foam. During the relevant period for foam-filled marine fenders and buoys, the defendant sold foam-filled marine fenders and buoys in the United States and elsewhere.

3. During the relevant period, the defendant, through one or more of its executives, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of foam-filled marine fenders and buoys, the primary purpose of which was to allocate customers and rig bids for contracts of foam-filled marine fenders and buoys sold in the United States and elsewhere. In furtherance of the conspiracy, one or more executives of the defendant attended meetings and engaged in discussions by telephone, facsimile and electronic mail with executives of other firms engaged in the manufacture and sale of foam-filled fenders and buoys. During these meetings and discussions, the defendant and co-conspirators agreed to allocate customers and rig bids for contracts of foam-filled marine fenders and buoys sold in the United States and elsewhere, including foam-filled marine fenders and buoys sold for installation in U.S. Coast Guard facilities, Department of Defense facilities, including those of the U.S. Navy, as well as facilities of other public entities and private companies.

4. During the relevant period, foam-filled marine fenders and buoys sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of foam-filled marine fenders and buoys, as well as payments for foam-filled marine fenders and buoys, traveled in interstate and foreign commerce. The business activities of the defendant and co-conspirators in connection with the production and sale of foam-filled marine fenders and buoys



affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

5. Acts in furtherance of this conspiracy were carried out within the Eastern District of Virginia within the relevant period. Foam-filled marine fenders and buoys affected by this conspiracy were sold by one or more of the conspirators to customers in this District.

The Plastic Marine Pilings Conspiracy

6. Plastic marine pilings are reinforced synthetic pilings, resembling telephone poles, that can be used as substitutes for traditional wood timber pilings in port and pier construction projects. During the relevant period for plastic marine pilings, the defendant sold plastic marine pilings in the United States and elsewhere.

7. During the relevant period, the defendant, through one or more of its executives, participated in a conspiracy with other persons and entities engaged in the manufacture and sale of plastic marine pilings, the primary purpose of which was to allocate customers and rig bids for contracts of plastic marine pilings sold in the United States and elsewhere. In furtherance of the conspiracy, one or more executives of the defendant attended meetings and engaged in discussions by telephone, facsimile and electronic mail with executives of other firms engaged in the manufacture and sale of plastic marine pilings. During these meetings and discussions, the defendant and co-conspirators agreed to allocate customers and rig bids for contracts of plastic marine pilings sold in the United States and elsewhere, including plastic marine pilings sold for installation in Department of Defense facilities, including those of the Army Corps of Engineers and the U.S. Navy, as well as facilities of other public entities and private companies.

8. During the relevant period, plastic marine pilings sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of plastic marine pilings, as well as payments for plastic marine pilings, traveled in interstate and foreign commerce. The business activities of the defendant and co-conspirators in connection with the production and sale of plastic marine pilings affected by this conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

9. Acts in furtherance of this conspiracy were carried out within the Eastern District of Virginia during the relevant period. Plastic marine pilings affected by this conspiracy were sold by one or more of the conspirators to customers in this District.

10. This Statement of Facts does not contain each and every fact known to the defendant and to the United States concerning the defendant's and others' involvement in the charges set forth in the Plea Agreement.

Respectfully submitted,

Kenneth W. Gaul
Jon B. Jacobs
Attorneys, Antitrust Division
U.S. Department of Justice

Robert J. Seidel, Supervisory
Assistant United States Attorney

4

I am the authorized corporate representative of defendant VIRGINIA HARBOR SERVICES, INC., and after consulting with corporate counsel, and pursuant to the Plea Agreement entered into this day between the defendant VIRGINIA HARBOR SERVICES, INC. and the United States, I hereby stipulate that the above Statement of Facts is true and accurate,

and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

VIRGINIA HARBOR SERVICES, INC.

By: _____
Michael L. Harper

I am counsel for defendant VIRGINIA HARBOR SERVICES, INC. I have carefully reviewed the above Statement of Facts with the defendant. To my knowledge, the defendant's decision to stipulate to these facts is an informed and voluntary one.

_____
Roxann E. Henry
Counsel for the Defendant